UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) <br> ) <br> ) |
| v. | ) Docket No. 2:15-cr-185-NT <br> ) |
| TIMOTHY P. GALLAGHER, | ) <br> ) |
| Defendant. | ) |

**ORDER ON DEFENDANT'S MOTION TO DISMISS**

The Indictment in this case alleges that between May of 2014 and January 5, 2015, the Defendant Timothy P. Gallagher, an agent of Stanford Management LLC ("**Stanford**"), an organization receiving in excess of $10,000 under federal programs administered by the United States Department of Housing and Urban Development ("**HUD**") and the United States Department of Agriculture ("**USDA**"), embezzled, stole, and converted to his own use without lawful authority, property worth about $80,000 owned by Stanford, all in violation of 18 U.S.C. § 666(a)(1)(A). Indictment (ECF No. 20). The Defendant moves to dismiss the Indictment on the grounds that 18 U.S.C. § 666(a)(1)(A) is void for vagueness both as applied and facially. Def.'s Mot. to Dismiss (ECF No. 30). The Government objects to the motion. Obj. to Def.'s Mot. to Dismiss (ECF No. 32).

## FACTS

The Government contends that it can prove the following facts at trial.[1] The Defendant was hired by Stanford in December of 2013 as a full-time construction project manager. Compl. ¶ 4. Stanford is a property management firm with several federally subsidized properties. Compl. ¶ 3. In 2013, Stanford received over $180,000 from HUD. In 2014, Stanford received over $192,000 from HUD and approximately $2,000,000 from the USDA. Compl. ¶ 3. Under federal regulations, managing agents of entities that receive federal subsidies must disclose any financial interests they have with any supplying entity. 7 C.F.R. 3560.102(g). The term given for such a covered relationship is an identity of interest ("**IOI**") entity.[2] Under the regulations,

---

[1] The Government relies on the Complaint to provide the basic facts of the case. The Complaint includes the sworn affidavit of HUD Special Agent Stephen P. Tufts. Compl. (ECF No. 3). The Defendant does not dispute any of the Government's facts. Therefore, I will use the Government's statement of the facts for purposes of deciding this motion.

[2] Identity of interest entities are defined as follows:

> A relationship between applicants, borrowers, grantees, management agents, or suppliers of materials or services described under, but not limited to, any of the following conditions:
>
> (1) There is a financial interest between the applicant, borrower, grantee and a management agent or the supplying entity;
>
> (2) One or more of the officers, directors, stockholders or partners of the applicant, borrower, or management agent is also an officer, director, stockholder, or partner of the supplying entity;
>
> (3) An officer, director, stockholder, or partner of the applicant, borrower, or management agent has a 10 percent or more financial interest in the supplying entity;
>
> (4) The supplying entity has or will advance funds to an applicant, borrower, or management agent;
>
> (5) The supplying entity provides or pays on behalf of the applicant, borrower, or management agent the cost of any materials or services in connection with obligations under the management plan or management agreement;

a managing agent must receive agency approval to use an IOI firm prior to entering into any contractual relationships that involve agency funds. 7 C.F.R. § 3560.102(g). Managing agents cannot purchase goods and services from an IOI entity until the relationship has been disclosed and the agency has determined that the IOI entity's "costs are as low as or lower than arms-length, open-market purchases." 7 C.F.R. § 3560.102(j)(1)(vi).

In his role as a project manager, the Defendant was responsible for the oversight of scope, direction, monitoring and completion of at least nine Stanford construction projects. Compl. ¶ 4. Between May of 2014 and January 5, 2015, the Defendant hired a construction company, Harley Construction, to perform work through subcontractors at Stanford properties in Maine. Compl. ¶ 4. Over that period of time, the Defendant owned Harley Construction, a fact he concealed from Stanford by claiming that Harley was owned by Jon Branmeir. Compl. ¶ 4.

On December 31, 2014, the Defendant told a subcontractor that Stanford had scheduled a meeting for January 5, 2015, and the Defendant was worried that he would be fired and arrested because Stanford had learned that he owned Harley. Compl. ¶ 7. On January 5, 2015, Stanford fired the Defendant. Compl. ¶ 4.

---

(6) The supplying entity takes stock or a financial interest in the applicant, borrower, or management agent as part of the consideration to be paid them; or

(7) There exists or come into being any side deals, agreements, contracts or understandings entered into thereby altering, amending, or canceling any of the management plan, management agreement documents, organization documents, or other legal documents pertaining to the property, except as approved by the Agency.

7 C.F.R. § 3560.11.

On about February 17, 2015, a Stanford representative interviewed the Defendant, and the Defendant stated that Branmeir is a silent partner for Harley. Compl. ¶ 5. The Defendant said that he knew he had to disclose his interest in Harley, but he did not because it was a way to make money by acting as a general contractor on the projects. Compl. ¶ 5.

About two weeks after he was fired, the subcontractor that the Defendant had previously spoken with contacted the Defendant because the subcontractor had not yet been paid. Compl. ¶ 7. The Defendant told the subcontractor that Stanford wanted to talk to Branmeir prior to releasing any funds on the project. Compl. ¶ 7. The Defendant asked the subcontractor to pose as Branmeir. Compl. ¶ 7.

According to Stanford's records, between May 14, 2014 and November 25, 2014, Stanford paid Harley Construction $251,073 in federal funds for work performed at nine Stanford properties. Compl. ¶ 6. Androscoggin Savings Bank records reflect that Harley paid $171,434 to subcontractors on those jobs. Compl. ¶ 6. The government alleges that the Defendant embezzled the $79,639 difference. Compl. ¶ 6.

## DISCUSSION

The Defendant argues that both § 666 and the accompanying regulations are unconstitutionally vague. The void for vagueness doctrine stems from the Due Process Clause of the Fifth Amendment. *United States v. Williams*, 553 U.S. 285, 304 (2008). "A conviction fails to comport with due process if the statute under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously

discriminatory enforcement." *Id.*; *see also United States v. Anzalone*, 766 F.2d 676, 678 (1st Cir. 1985). A statute must give fair warning, "in language that the common world will understand, of what the law intends to do if a certain line is passed." *McBoyle v. United States*, 283 U.S. 25, 27 (1931).

I.   **As Applied Challenge**

In *United States v. Zhen Zhou Wu*, 711 F.3d 1, 15 (1st Cir. 2013), the First Circuit explained that "[o]utside the First Amendment context, we consider 'whether a statute is vague as applied to *the particular facts at issue*,' for a defendant 'who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.' " *Id.* (quoting *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18-19 (2010)); *see also Maynard v. Cartwright*, 486 U.S. 356, 361 (1988) ("Vagueness challenges to statutes not threatening First Amendment interests are examined in light of the facts of the case at hand; the statute is judged on an as-applied basis."). The "void for vagueness doctrine" addresses two discrete due process concerns: "first, . . . regulated parties should know what is required of them so they may act accordingly; second, precision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way." *F.C.C. v. Fox Television Stations, Inc.*, 132 S. Ct. 2307, 2317 (2012).

The Defendant first asserts that the phrase "converted property without authority"[3] is so vague that it violates the Due Process Clause of the Fifth

---

[3]   Both the Government and the Defendant take liberties with the actual statutory phrase, which is "without authority knowingly converts." 18 U.S.C. § 666(a)(1)(A). The Government discusses the conversion clause as "without lawful authority." Obj. to Def.'s Mot. to Dismiss at 1, 7, 8, 9.

5

Amendment by failing to give fair notice of what conduct is prohibited. Def.'s Mot. to Dismiss 2. The cornerstone of a vagueness challenge is statutory ambiguity. *United States v. Meade*, 175 F.3d 215, 222 (1st Cir. 1999) (rejecting a fair warning/vagueness attack on a statute that contained "no ambiguity"). Such ambiguity raises the possibility that ordinary people will not understand what conduct is forbidden and increases the chances of arbitrary or discriminatory enforcement. *Kolender v. Lawson*, 461 U.S. 352, 357 (1983).

Section 666 governs the "[t]heft or bribery concerning programs receiving Federal funds" and it prohibits "an agent of an organization," which "receives, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance" from "embezzl[ing], steal[ing], obtain[ing] by fraud, or otherwise without authority knowingly convert[ing] to the use of any person other than the rightful owner . . . property that- (i) is valued at $5,000 or more, and (ii) is owned by, or is under the care, custody, or control of such organization . . . ." 18 U.S.C. §§ 666(a)-(b).

Here, the undisputed facts provide that the Defendant was employed as an agent for Stanford to administer federally funded construction projects. The Defendant owned Harley Construction, which served as a general contractor on Stanford properties. The Defendant admitted that he knew that he had to disclose his interest in Harley Construction, but did not because he saw his dual role as a way to make money. Records show that the Defendant profited $79,639.

6

The Defendant claims that the term "without authority knowingly converts" is ambiguous as applied to the facts of this case.[4] 18 U.S.C. § 666(a)(1)(A). Section 666(a)(1)(A) requires the government to prove beyond a reasonable doubt that the accused "knowingly" converted the property. That feature of the statute, in and of itself, lessens fair warning concerns. *See Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 (1982) (explaining that "a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed"). Here the Defendant is alleged to have knowingly failed to disclose Harley Construction as an IOI and failed to receive a USDA determination of "arms-length, open-market purchase" before accepting payment for work on federally subsidized projects. This is clearly proscribed by the statute and the regulations. As applied to the undisputed facts of this case, § 666 is not ambiguous.

In reply, the Defendant further takes issue with the USDA regulations use of the word "reasonable" when describing expenses and fees. Def.'s Reply to Mot. to Dismiss (ECF No. 33). Although the reasonableness language in the regulations may be unclear in some contexts and may in the appropriate case provide fodder for an argument that enforcement is arbitrary, here the Defendant is not being prosecuted

---

[4] The Defendant cites a single, distinguishable case that dealt with an as-applied challenge to 18 U.S.C. § 922(o)(2)(A), a provision which establishes an exception to the prohibition against possession of a machine gun where the weapon is possessed "under the authority of, the United States or any department or agency thereof, or a State, or a department, agency, or political subdivision thereof." *United States v. Vest,* 448 F. Supp. 2d 1002, 1008 (S.D. Ill. 2006). The Court determined that the statute was unconstitutional as applied to the defendant, who was a law enforcement officer. *Id.* at 1008-10. The Defendant here makes no argument that he had authority to convert the funds without disclosing his financial interests.

for embezzling or converting fees or expenses that were unreasonable. Rather, the Defendant is charged with failing to disclose his interest in Harley Construction before causing Stanford to hire Harley Construction subcontractors, profiting from those subcontracts, and converting funds Stanford paid to Harley Construction to himself. The Defendant's as-applied vagueness challenge fails.

## II.      Facial Challenge

The Defendant also makes a passing reference to facial vagueness in his motion. *See* Def.'s Mot. to Dismiss 3. The Supreme Court had long held that a statute could be declared facially invalid only if the law was "impermissibly vague in all of its applications." *Vill. of Hoffman Estates,* 455 U.S. at 497. That changed recently in *Johnson v. United States,* 135 S. Ct. 2551, 2560 (2015), when six justices held that the "residual clause" of the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B), was void for vagueness despite the existence of "straightforward cases" in which the clause's application would be clear. *Id.* In *Johnson*, the Court wrestled with the interpretation of the residual clause, a provision that had engendered numerous circuit splits and that had been to the Supreme Court for clarification on four previous occasions over the course of a decade. *Id.* at 2558-2560.

The Defendant has failed to show that the prohibition against knowingly converting property without authority has engendered a confusion comparable to the residual clause of the Armed Career Criminal Act. The First Circuit has stated that:

> the notion of "fraudulent conversion," at the heart of embezzlement, may sound obscure, but, in fact, it is not. It essentially refers to, say, a bank teller, trustee, or guardian using money entrusted to him by another person for his own purposes or benefit and in a way that he knows the "entruster" did not intend or authorize.

*United States v. Young*, 955 F.2d 99 (1st Cir. 1992). Based on the lack of developed briefing, I simply have no basis to conclude that § 666 is unconstitutionally vague on its face.

## CONCLUSION

For the reasons stated above, the Court **DENIES** the Defendant's Motion to Dismiss.

SO ORDERED.

/s/ Nancy Torresen  
United States Chief District Judge

Dated this 7th day of March, 2016.